NICOLA T. HANNA
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
WILLIAM M.ROLLINS (Cal. Bar No. 287007)
GEORGE E. PENCE (Cal Bar No. 257595)
Assistant United States Attorneys
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-7407/2253
     Facsimile: (213) 894-2927
     E-mail:     william.rollins@usdoj.gov
                 george.pence@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>                  v.<br><br>GUAN LEI,<br><br>             Defendant. | No. MJ 20-04071<br><br>GOVERNMENT'S RESPONSE BRIEF IN SUPPORT OF DETENTION<br><br>Hearing Date: September 3, 2020<br>Hearing Time: 2:30 p.m. |
| --- | --- |

      Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys William M. Rollins
and George E. Pence, hereby files this Response Brief in Support of
Detention.

//

This memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 3, 2020            Respectfully submitted,

                                    NICOLA T. HANNA
                                    United States Attorney

                                    CHRISTOPHER D. GRIGG
                                    Assistant United States Attorney
                                    Chief, National Security Division


                                    _____/s/_____
                                    WILLIAM M. ROLLINS
                                    GEORGE E. PENCE
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Only detention will reasonably ensure defendant GUAN LEI's appearance at future court proceedings.  Many of the key facts establishing defendant's risk of flight are not in dispute: (1) defendant is a citizen of the People's Republic of China ("PRC") and a computer science researcher at the PRC's National University of Defense Technology ("NUDT"), an institution affiliated with the PRC's People's Liberation Army ("PLA"); (2) NUDT has, since 2015, been on the U.S. Department of Commerce's Entity List, specifically due to its development of supercomputers with nuclear explosive applications; (3) defendant's NUDT supervisors are high-ranking PLA officers; (4) at NUDT, defendant participated in military training and, at least on several occasions, wore PLA/military uniforms; (5) before his arrest, defendant had repeated contacts with the PRC consulate to secure a flight out of the United States; (6) defendant recently attempted to return to China via a flight from Los Angeles International Airport; (7) defendant has no family or real property in the United States (indeed, he recently told an Immigration Judge that he was "ready to become homeless"); (8) defendant has strong ties to the PRC, a country with whom the United States has strained foreign relations and no extradition treaty; and (9) defendant either has no lawful status in the U.S. or his status will soon expire because defendant's DS-2019 certificate of eligibility for a J-1 visa

1    has expired.[1]  These uncontested facts alone justify defendant's

2    detention.

3        Defendant seeks to divert attention from these facts by

4    transforming his detention hearing into full-blown trial – demanding

5    irrelevant testimony from a variety of named and unidentified

6    government officials.  But this Court need not make findings with

7    respect to any of the issues defendant proposes to contest through

8    in-person testimony to determine, by a comfortable margin, that

9    detention is warranted:  defendant's foreign ties, potential term of

10   imprisonment, lack of legal status in the United States, and absence

11   of any meaningful surety all weigh in favor of detention.  It is

12   well-established that the hearing provided for in the Bail Reform Act

13   should proceed by proffer; it is not designed to afford defendant a

14   discovery device.[2]

15       Nevertheless, as detailed in the government's filings to date

16   and further detailed below, there is substantial evidence that

17   defendant is a PLA member.  Moreover, as also detailed below,

18   defendant's recent misleading statements to an Immigration Judge cast

19   additional doubt on his reliability of as a surety of his own

20   appearance at future court proceedings, and defendant has not

21   proposed any third-party sureties.  His only known close associate in

22   the United States – his girlfriend, Z.Y., who is also a PRC citizen

_____

24       [1] Based on information provided by attorneys from the Department
25   of Homeland Security, Customs and Border Protection, persons in the
     United States on a J-1 visa are ordinarily afforded a 30-day grace
26   period to leave the United States after their eligibility for a J-1
     visa expires.

27       [2] Although not obligated to do so, the government has, at
     defense counsel's request, already started producing documents to
28   defendant and has proposed a Stipulated Protective Order to govern
     such productions.

and computer researcher – was arrested on August 31, 2020, designated as a material witness in this case, and ordered detained by the Honorable Rozella A. Oliver, United States Magistrate Judge, after Z.Y. attempted to board a flight to the PRC.

For all of these reasons, GUAN should be detained.

## II.   LEGAL STANDARD

"Detention hearings are an informal proceeding, and the evidence presented is not governed by the Federal Rules of Evidence." United States v. Duncan, 897 F. Supp. 688, 690 (N.D.N.Y. 1988); 18 U.S.C. § 3142(f)(2).   The government may proceed in a detention hearing by way of proffer.   See United States v. Smith, 79 F.3d 1208, 1209-10, (D.C. Cir. 1996) (citations omitted).   The rationale for permitting detention hearings to proceed by way of proffer is that such hearings are "neither a discovery device for the defense nor a trial on the merits." Smith, 79 F.3d at 1210.   "The process that is due is only that which is required by and proportionate to the purpose of the proceeding." Id.   "That purpose includes neither a reprise of all the evidence presented before the grand jury, United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986), nor the right to confront non-testifying government witnesses, United States v. Accetturo, 783 F.2d 382, 388-89 (3d Cir. 1986). Smith, 79 F.3d at 1210 (also citing United States v. Hurtado, 779 F.2d 1467, 1479 (11th Cir. 1985) (purpose of pretrial detention hearing is not to "rehash . . . probable cause" but to provide opportunity for detainee to show no risk of flight or danger to community); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992)).

"A right to require the government to produce its witnesses against [a defendant] would complicate the hearing to a degree out of

3

proportion to the liberty interest at stake - viz. the interest in remaining free until trial, for what is by statute a period of limited duration." Smith, 79 F.3d at 1210; see also Speedy Trial Act, 18 U.S.C. § 3161, et seq. Blanket denials or objections by the defense to the government's proffer, or the "more obscure requests" that the issue cannot be addressed "without cross examination and/or discovery" are insufficient to justify live witness testimony during a bail hearing. United States v. Cabrera-Ortigoza, 196 F.R.D. 571, 574-75 (S.D. Cal. 2000).

## III. ARGUMENT

### A. GUAN's Chinese Scholarship Council ("CSC") Code Identifies Him as a Member of the PRC Military

As detailed in the Affidavit of Timothy Hurt, which is attached hereto as **Exhibit A**, the FBI has uncovered additional information not set forth in the affidavit in support of the Complaint proving defendant is a PLA member. Specifically, four numbers ("0317") in the unique code assigned to GUAN by the CSC, which granted him a scholarship in connection with his research at the University of California, Los Angeles, identify GUAN as a PLA officer or "cadre" member, both of which are uniformed Chinese military personnel. (Ex. A, ¶ 2.) In fact, over the last nine months alone, five Chinese military officers who came to the United States using the same CSC code ("0317") have been charged with federal crimes such as visa fraud. (Id. ¶¶ 2-3.)

### B. Defendant's Misleading Statements to an Immigration Judge

Defendant's recent acts of deception and concealment before an Immigration Judge reinforce the fact that he cannot be trusted to appear for trial in this case. In advance of his Departure Control

4

Order hearing scheduled for August 27, 2020, defendant submitted documents to Assistant Chief Immigration Judge Rodin Rooyani purporting to show that he was not in the PRC military. Those documents are attached hereto as **Exhibit B**. One of those documents was GUAN's NUDT admission letter. (Ex. B at 17-20.) It appears that, in the letter provided to that Court, defendant either deleted the Mandarin characters for the phrase "People's Liberation Army" that precede the Mandarin characters for "NUDT," or that he was provided with a different form by PRC authorities to obfuscate his PLA affiliation. (Ex. A, ¶ 4.) Moreover, GUAN provided that Court with the purportedly certified translations of letters addressed to him from NUDT that address defendant as merely "Guan Lei." (Ex. B at 14, 17.) According to an FBI linguist, however, the letters actually address defendant as "Comrade Guan Lei," which is a form of address commonly used to refer to a fellow soldier and/or fellow communists.[3]

Defendant also provided the Immigration Judge with a statement "under penalty of perjury." (Ex. B at 4.) In that statement, defendant wrote that on July 30 "more than 10 FBI agents" came to his home. (Id.)[4] Defendant continued: "At that time, I was not home, but my poor fiancé was there." (Id.) In fact, as explained in the affidavit in support of the criminal complaint, defendant was near his home (doing laundry in a common space just across the street from his apartment unit) at the time of the FBI search on July 30, 2020. (Compl. ¶ 54.) But defendant "briskly walked toward the nearby U.C. Irvine campus when he saw the FBI team arrive." (Id.) Agents – who

---

[3] See https://www.merriam-webster.com/dictionary/comrade (last accessed Sept. 3, 2020).

[4] The FBI executed a search warrant at defendant's apartment on July 30, 2020.

1    also had a warrant to search GUAN's person – "followed [defendant]

2    but were unable to locate him that night." (Id.)

3         Defendant also claimed under oath that he showed the FBI his

4    computer (which he told the Immigration Court merely contained photos

5    of defendant and his fiancé traveling across the United States) and

6    that the FBI seized all of his electronic devices but that there was

7    "nothing against us." (Ex. B at 4.)  Defendant omitted the fact that

8    all of his devices were purged of data before his FBI interview

9    because they were either "formatted," "reset," or had a new operating

10   system, as he told the FBI.  (Compl. ¶¶ 37-38.)[5]

11        **C. Defendant's New Arguments in Support of Release are Meritless**

12        In his opposition brief, defendant selectively omits key facts

13   from his arguments in an attempt to distort the complete picture of

14   his risk of flight.  For example:

15        **1.    Defendant Omits Key Context Surrounding his LAX Departure**

16        Defendant claims there is no evidence he attempted to "flee"

17   from the United States because he already booked his flight in

18   advance of FBI contact.  (Opp. at 3-4.)  But defendant's June 18,

19   2020 email to the PRC Consulate shows that he requested a flight back

20   to the PRC not simply because of his visa status, but also because

21   his "university in China" had been placed on the "so called black

22   list" by the United States.  (Compl. ¶ 33.)[6]  Defendant also visited

23   the PRC Consulate in early July, around the same time that data on

24   _____

25        [5] Defendant also stated under oath that he "absolutely did not
     lie to the agent!"  As detailed in the government's prior brief,
26   defendant appears to have made several false or misleading statements
     (and omitted material facts) during his FBI and CBP interviews.
27   (Supp. Mem. at 4.)

28        [6] When later asked by the FBI whether he knew that NUDT had been
     embargoed by the U.S., defendant said that he did not and suggested
     that the agent search the internet for the answer. (Compl. ¶ 32.)

his digital devices began getting wiped.  (<u>Id.</u> ¶¶ 37-38, 50.)
Moreover, immediately before attempting to board the plane to China,
defendant lied to CBP officers about his contact with the consulate.
(<u>Id.</u> ¶¶ 45-46.)  Contrary to defendant's new argument (Opp. at
10:14), defendant's lie to CBP makes perfect sense:  having learned
NUDT was black-listed and having been interviewed twice by the FBI
immediately before July 20, defendant hoped his last-minute lie to
CBP at LAX would enable him to leave the country on a flight to
China.  Five days later, after he was denied exit from the U.S.,
defendant threw a destroyed hard drive into a dumpster outside his
apartment.  (<u>Id.</u> ¶ 44.)

**2.   Defendant Selectively Omits His Contradictory Statements to the FBI About His PLA Service**

Defendant also omits crucial context regarding his statements
about PRC military training and his use of PRC military uniforms.
(Opp. at 5-6.)  Defendant initially <u>denied</u> ever wearing a Chinese
military uniform during his FBI interview (and specifically said he
did not know whether the uniforms were "hot" because he never wore
them); it was only <u>after</u> defendant was confronted with the
possibility of whether the FBI could find photos of defendant online
in military uniform that he admitted participating in military
training and wearing uniforms.  (Compl. ¶¶ 24-27.)  Contrary to his
brief (Opp. at 5:20), defendant did not say that he only wore
military uniforms during "training."  In fact, he admitted wearing a
uniform on holidays like the China National Holiday. (Compl. ¶ 26.)
Defendant's brief also fails to mention that his NUDT advisors were
PLA military officers, including a PLA General who developed the
Galaxy supercomputer.  (<u>Id.</u> ¶¶ 28-31.)  Moreover, as discussed above,

7

1   the government has obtained even more recent information showing that

2   defendant used the same unique digits ("0317") in a portion of his

3   CSC code that was also used by five other PLA officers recently

4   arrested in the United States.[7]

5       **3.   Defendant Used Undisclosed Digital Storage Devices**

6       In arguing that he never intended to mislead the FBI about the

7   additional digital devices found in his apartment on July 30 because

8   they simply belonged to his girlfriend, defendant once again omits

9   key facts. (Opp. at 7.)  While three of these devices were indeed

10  found on what appeared to be Z.Y.'s desk (and another on the bed),

11  defendant's brief fails to mention that: (1) the iPad Air2 was logged

12  into GUAN's WeChat account; (2) the external hard drive on the desk

13  had been purged of all its data; and (3) the USB storage drive had an

14  application with GUAN's name addressed to the PRC Consulate in Los

15  Angeles seeking a return flight to China on July 2, 2020.  (Compl.

16  ¶¶ 41-43.)  Yet when asked specifically by FBI personnel on July 18

17  whether he had any storage drives "anywhere else," GUAN responded,

18  "no[.]"  As charged in the Complaint, seven days after this FBI

19  interview, GUAN also threw a destroyed hard drive into a dumpster

20  outside his apartment, while Y.Z. apparently served as a lookout in

21  the parking lot.  (Id. ¶ 55.)

22  **II.  CONCLUSION**

23      For the foregoing reasons, the government respectfully requests

24  that this Court detain defendant pending trial.

25

26  _____

27      [7] Defendant claims that the Complaint does not provide facts
    regarding certain other PLA officers' recent arrests in the United
    States. (Opp. at 6.)  But the government's supplemental memorandum
28  specifically references complaints from around the country which are
    supported by separate affidavits.  (Supp. Mem. at 2.)